IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Thomas Griffin, Jr.,                :

                Plaintiff,          :   Case No. 2:10-cv-664

    v.                              :   JUDGE GREGORY L. FROST
                                        Magistrate Judge Kemp
Correctional Officer Kyle,          :

                Defendants.         :


                    REPORT AND RECOMMENDATION

        This prisoner civil rights case was filed by Thomas Griffin,
Jr., an inmate at the Belmont Correctional Institution located in
St. Clairsville, Ohio.  As prior orders of this Court indicate,
Mr. Griffin's complaint arises out of an incident which occurred
at the Belmont Correctional Institution on April 18, 2010, during
which one of the defendants, Corrections Officer Kyle, emptied a
canister of tear gas or pepper spray into an inmate dormitory.
        On July 28, 2011, Mr. Griffin filed a motion for summary
judgment.  On August 16, 2011, Defendants Michelle Miller, the
Warden at Belmont, and Ernie Moore, the Director of the Ohio
Department of Rehabilitation and Correction, moved for summary
judgment, and on the same day, defendant B.J. Hammond, a
corrections officer, filed a separate motion for summary
judgment.  All three of these defendants also relied on their
motions as responses to Mr. Griffin's summary judgment motion.
        On August 17, 2011, Officer Kyle filed a response to Mr.
Griffin's motion for summary judgment, and six days after that,
she filed her own motion for summary judgment.  Mr. Griffin then
filed a motion to stay or dismiss all of the defendants' summary
judgment motions, arguing that he needed discovery to oppose the
motions, and that the Court had recently extended the discovery

cutoff date to November 10, 2011, so that he would not have the necessary discovery prior to that date.  The Court granted his motion and set the new response dates for all of the defendants' summary judgment motions as November 17, 2011.

Since the date of that latter order, which was filed on October 17, 2011, Mr. Griffin has filed a notice of service of subpoenas to testify at deposition, a motion to dismiss Director Moore (which is unopposed), a second notice of service of subpoenas, and a copy of a deposition subpoena for Officer Kyle. He also filed a pretrial statement.  He did not, however, file a response to any of the summary judgment motions.  Because it is now almost two months after the date those responses were due, the Court considers them ready for a decision based on the current record, which includes Mr. Griffin's summary judgment motion (essentially, the Court has before it cross-motions for summary judgment), the affidavits filed by defendants, and Mr. Griffin's verified complaint.  The last of these documents does have evidentiary value; as this Court stated in <u>Collaborative Systems Group, Inc. v. Grove</u>, 2011 WL 4502019, *2 (S.D. Ohio Sept. 28, 2011),

> A verified complaint  carries the same weight as would an affidavit for the purposes of summary judgment. <u>El Bey v. Roop</u>, 530 F.3d 407, 414 (6th Cir. 2008) (citing <u>Lavado v. Keohane</u>, 992 F.2d 601, 605 (6th Cir. 1993) (explaining that where a party files a verified complaint, the allegations  contained therein "have the same force and effect as an affidavit for purposes of responding to a motion for summary judgment" (internal quotation marks omitted)).

Before reaching the merits of the cross-motions, however, the Court first considers Mr. Griffin's motion to dismiss his claims against Director Moore.  If this motion has merit, there is no need to discuss whether Director Moore is entitled to summary

judgment.

## I.  Defendant Ernie Moore

Defendant Moore moved for summary judgment on the ground that he was not personally involved in the incident about which Mr. Griffin has complained.  In response, Mr. Griffin moved to dismiss Mr. Moore as a defendant, but asked that the dismissal be without prejudice.  Although a defendant in Mr. Moore's position might assert that a dismissal without prejudice at this stage of the case, after he had moved for summary judgment, would cause him to suffer "plain legal prejudice" beyond the mere prospect of facing a second lawsuit, see Grover by Grover v. Eli Lilly and Co., 33 F.3d 716, 718 (6th Cir. 1994), that argument has not been made, and the motion to dismiss has not been opposed.  Therefore, the Court will recommend that the motion to dismiss the claims against Defendant Moore be granted.

## II.  The Basic Facts

In its Report and Recommendation filed on July 15, 2011, Doc. #66, at 1-2, the Court described the facts of this case in the following way:

> Mr. Griffin's complaint is based on the following facts, as he alleges them.  On April 18, 2010, Belmont Correctional had been placed on lockdown status due to some inmate fights.  After the evening meal was served, Mr. Griffin went to the restroom.  While he was there, Corrections Office Kyle, one of the defendants, entered and ordered everyone to leave.  Mr. Griffin advised her that he had been given permission by another corrections officer to use the restroom, but Officer Kyle again ordered everyone to leave.  As Mr. Griffin attempted to comply with her order, she sprayed him with tear gas, and she continued to do so even as Mr. Griffin and the other inmates returned to the dormitory area.  Then, with the help of another of the defendants, Corrections Officer Hammond, Officer Kyle emptied a tear gas fogger into the dormitory.  Mr. Griffin claims that since that time, he has had problems with his vision and also has experienced weight loss, skin irritation, and breathing

-3-

difficulties.

Beyond this basic set of facts, the defendants have all submitted evidentiary materials with their summary judgment motions.  As noted below, the way the Court construes all of these facts depends upon whether it is considering Mr. Griffin's summary judgment motion, in which case the facts are construed in defendants' favor, or the defendants' motions, in which case the opposite approach is used.  The Court will recite additional facts in connection with its discussion of whether either Mr. Griffin or any of the defendants is entitled to summary judgment.

III.  <u>The Summary Judgment Standard</u>

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute.  It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. <u>Poller v. Columbia Broadcasting Systems, Inc.</u>, 368 U.S. 464 (1962).  The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970).  Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962). The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See <u>Celotex Corp. v.</u>

-4-

Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.

The fact that the parties have cross-moved for summary judgment does not establish that there are no triable factual issues. "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." Taft Broadcasting Co. v. United States, 929 F.3d 240, 248 (6th cir. 1991). Rather, as that decision notes, quoting John v. State of La. (Bd. of Trustees for State Colleges and Universities), 757 F.2d 698, 705 (5th Cir.1985), "'[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record.'" Rather, the Court must evaluate each motion separately under Rule 56's standards. Id.

IV. Defendant Michelle Miller

There is no dispute that, at the time of this incident, Michelle Miller was the Warden of the Belmont Correctional Institution, and that she was not personally present when Officer Kyle used pepper spray and tear gas in the restroom and dormitory where Mr. Griffin was housed. As also noted in the Court's prior Report and Recommendation, Mr. Griffin has alleged in his complaint that the Warden was responsible for what occurred either due to her failure to discipline corrections officers who

-5-

engaged in the violation of inmates' rights or the failure properly to recruit, train, supervise or discipline such officers.  In his motion for summary judgment, Mr. Griffin does not provide any more factual support for this claim, but argues that "Defendant Miller ... could not possibly have made certain that the employees under [her] care and control were aware of the constitutional rights of the inmates they were charged with guarding or the present situation would have never been possible."

The Court must assume, as true, for purposes of Warden Miller's motion, that the incident happened just as Mr. Griffin has described it.  It does not have to assume, however, that Mr. Griffin's allegation about inadequate training is true.  Even though his complaint is verified, it does not establish that he has any first-hand knowledge about the way in which Warden Miller trained, recruited or supervised corrections officers in general, or officers Kyle and Hammond in particular.  Without such a foundation, conclusory allegations about matters outside an affiant's knowledge are given no evidentiary weight in summary judgment proceedings.  See Fed.R.Civ.P. 56(c)(4)("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); Reddy v. Good Samaritan Hosp. & Health Ctr., 137 F.Supp.2d 948, 955-56 (S.D. Ohio 2000)("it must be evident from the affidavit that the facts contained [in a summary judgment affidavit] are based on personal knowledge").

On the other hand, Warden Miller has submitted with her motion a declaration of Donald D. Buff, the training officer at Belmont, who states that he is personally familiar with the training practices for new corrections officers given at the ODRC training academy and the training they receive after being

-6-

assigned to the Belmont institution.  He also notes that ODRC has
regulations relating to the appropriate use of force in the
institutional setting, which specify that only the amount of
force necessary to control a situation may be used, and which
allow for both staff and inmates to report and request an
investigation of any use of force.  At Belmont, both the Deputy
Warden for Operations and the Warden review any use of force
incidents.  Further, his declaration states that Officer Kyle was
trained in these procedures and that all corrections officers
receive forty hours of retraining each year, which includes
training about the use of force and unarmed self-defense.
Finally, he declares that the vast majority of incidents at
Belmont over the past thirteen years where pepper spray was used
have been found to have been justified under the use of force
policy then in effect.

It is well-settled that a supervisory official who did not
directly participate in an alleged constitutional violated may be
held liable under 42 U.S.C. §1983 only in certain very discrete
situations.  General supervisory liability - that is, liability
based solely on the fact that the constitutional violation was
committed by a subordinate employee - is not available.  Monell
v. Department of Social Services, 436 U.S. 658 (1978); Bellamy v.
Bradley, 729 F.2d 416, 421 (6th Cir. 1984).  A supervisor's
failure to train a subordinate officer appropriately, or the
ratification of unconstitutional actions by subordinate officers
through a policy of failing to discipline officers for prior
unconstitutional actions, are both valid theories of liability
under §1983.  See, e.g., Skovgard v. Pedro, 2010 WL 546368, *13
(S.D. Ohio February 10, 2010)(Rice, J.), citing Gregory v. City
of Louisville, 444 F.3d 725 (6th Cir. 2006).  However, there must
be evidence in the record from which such a failure to train, or
failure to discipline, can be reasonably inferred, and there must

-7-

also be evidence that such failures demonstrate a deliberate indifference to the possibility that serious harm may result.

Here, there is simply no evidence that Warden Miller was deliberately indifferent to the safety of the inmates under her care because she allegedly failed to insure that the correctional officers at Belmont were either properly trained or properly disciplined.  The only admissible evidence on that subject - the Buff declaration - shows precisely the opposite.  Mr. Griffin's assertion that the only plausible explanation for Officer Kyle's alleged excessive use of force is that she was either not correctly trained, or that she knew from past incidents that she would not be disciplined even if she used excessive force, runs contrary to the case law on this subject.  Where only one incident has occurred, and the plaintiff relies on that one incident as evidence of an unconstitutional hiring policy, liability for the supervisor is possible "[o]nly where adequate scrutiny of the applicant's background would [have led] a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right ...." Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 398 (1997).  There is no such evidence in this record.  And as far as training is concerned, that type of liability may be available only for governmental bodies and not individual supervisors such as the Warden.  See, e.g., Cabaniss ex rel. Estate of Cabaniss v. City of Riverside, 497 F.Supp. 2d 862 (S.D. Ohio 2006), aff'd 231 Fed. Appx. 407 (6th cir. 2007).  Further, as the Court stated in Leonard v. Compton, 2005 WL 1460165, *8 (N.D. Ohio June 17, 2005), "plaintiffs cannot simply rely on the constitutional violation itself to make their 'failure to train' case."  Because that is all that Mr. Griffin offers here, Warden Miller is entitled to summary judgment on his §1983 claims

-8-

against her.

## V.   Defendant Hammond

With respect to Mr. Griffin's motion for summary judgment against Corrections Officer Hammond, the facts which must be taken as true are the facts presented by Officer Hammond in his motion for summary judgment, which also serves as his response to Mr. Griffin's motion.  As the non-moving party, Officer Hammond is entitled to have all material factual disputes resolved in his favor.

Officer Hammond's affidavit provides the following explanation of his role in the events of April 18, 2010.  On that day, he was assigned to a dormitory unit which had two sides - side A and side B.  There are both inner and outer gates to the dormitories, located about ten feet apart.

Right around 5:30 p.m., Officer Hammond was working on the A side of the dormitory when the inmates present there made it known that they were not on lockdown status.  About six minutes later, he heard an officer yelling from the restroom area.  He went into the restroom and found Officer Kyle there.  She told him that she had lost control of the inmates on the B side of the dormitory.  He instructed her to lock the inner, or "crash," gate in order to prevent the inmates from leaving the dormitory.  He did not believe that anything could be gained by going into the dormitory itself if the inmates were truly out of control.  At Officer Kyle's request, he handed her a large canister of pepper spray, believing that if she were attacked while in the process of trying to lock the crash gate (which was only six to ten feet from the restroom door), she would need some form of self-protection.

While Officer Kyle, who had the keys to the crash gate, went outside to lock it, Officer Hammond stayed in the rest room and called for assistance.  At some point, he discovered that Officer

-9-

Kyle had actually gone into the dormitory.  He went in to assist her in escaping, and as he did so, she began spraying the area with the large can of pepper spray.  He almost immediately lost the ability to function, fell to the floor, and vomited.  Another officer called for assistance and once more corrections officers arrived, Officer Hammond was able to leave the dormitory area. He did not know, when he gave Officer Kyle the pepper spray, that she was going to go into the dorm, and he believed, based on what she told him, there was a severe disturbance in the dorm.  He also did not turn the ceiling fans in the dorm on or off, being physically incapacitated almost as soon as he entered that area.

Mr. Griffin correctly points out, in his motion, that the Eighth Amendment governs claims of the use of excessive force in the prison setting, and that the question of whether an unconstitutional level of force was used on an inmate is determined, at least in part, by an objective standard.  As the Court of Appeals recently explained, "[w]hether Defendants' alleged conduct constituted excessive force in violation of the Eighth Amendment depends on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Barker v. Goodrich, 649 F.3d 428, 434 (6th Cir. 2011), quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992).  The amount of force reasonably necessary to control a particular situation is usually determined based on the facts of the situation itself, as demonstrated from the record.  Whether a prison official acted with the required mental state - the subjective element of this test, which requires proof of malice - can be informed by the extent to which the force used exceeded what was necessary, and by the extent of the injury suffered.  Bertoli v. Fultz, 2006 WL 689063 (S.D. Ohio March 16, 2006).  However, the Eighth Amendment is violated by any malicious and sadistic use of force, no matter how significant

-10-

the inmate's injury may be.  See Hudson, supra, at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.... [T]his is true whether or not significant injury is evident").

Assuming the facts in Officer Hammond's affidavit to be true, when he provided Officer Kyle with the tear gas canister, he had no reason to believe she would even enter the dormitory, let alone empty the contents of the canister into the room. There is, at the very least, evidence to show that he did not act sadistically and maliciously, or that he did not have an intent to punish the dormitory inmates.  Strictly speaking, he did not use force against them at all, and if what he says is true, he did not actively participate in Officer Kyle's use of force - he did not even know that she intended to use force, nor did he know the magnitude of her intended use.  For these reasons, the Court cannot grant summary judgment to Mr. Griffin on his claims against Officer Hammond.

Turning now to Officer Hammond's summary judgment motion, the question is whether, assuming the facts pleaded in the verified complaint (and about which Mr. Griffin claims to have personal knowledge) are true, Officer Hammond might have committed an Eighth Amendment violation.  The legal standard is the same as that recited above; the questions are, first, was there a use of force which exceeded that which was required and from which a malicious intent to punish can be inferred, and, second, did Officer Hammond participate in that use of force in a way which would make him legally responsible for it.

The complaint alleges the following about Officer Hammond's involvement.  After describing Officer Kyle's actions in spraying pepper spray in the both the bathroom and the dormitory, accompanied by various statements to the inmate population, the complaint states:

13.  That Defendant Corrections Officer Hammond
did them (sic) turn on the overhead fans spreading the
tear gas over the entire dorm.

14.  That Defendant Corrections Officer Hammond
did them (sic) give Defendant Officer Kyle what is
known as a tear gas fogger which is for outside use.

Complaint, Doc. #1.  The complaint also states that Mr. Griffin
was in the restroom and the dormitory at all relevant times, so
it can be reasonably inferred that he claims to be an eyewitness
to all of these events.

The factual difference between Mr. Griffin's verified
complaint and Officer Hammond's affidavit is evident.  Officer
Hammond denies having turned on the fans, while Mr. Griffin
claims that he did so.  Officer Hammond's sequence of events is
also very different; he states that he gave the tear gas fogger
to Officer Kyle in the restroom, believing that she would not
enter the dormitory.  Conversely, Mr. Griffin has sworn that
Officer Hammond gave the fogger to Officer Kyle only after he
turned on the fans, and at a time when he was physically present
in the dormitory and would have witnessed Officer Kyle's use of
the gas against Mr. Griffin and other defenseless inmates.

The Court concludes that these factual differences are
material to the outcome of the summary judgment motion.  In his
motion for summary judgment, Officer Hammond does not argue that
the facts, as recited in the complaint, do not constitute an
Eighth Amendment violation or that those facts do not demonstrate
his involvement.  Rather, he argues, based upon the facts
contained in his own affidavit, that he did not violate Mr.
Griffin's constitutional rights.  But a party moving for summary
judgment may not simply argue the case based on his own version
of the facts.  As this Court has observed, when a defendant's
summary judgment argument is "based on a version of the facts

-12-

that skews in [his] favor" that argument is "unpersuasive at the summary judgment stage." Campbell v. City of Springboro, Ohio, 788 F.Supp.2d 637, 670 (S.D. Ohio 2011).

As in all summary judgment proceedings, the Court must decide "'not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it upon whom the *onus* of proof is imposed.'" Dunigan v. Noble, 390 F.3d 486, 492 (6th cir. 2004), quoting Schuylkill & Dauphin Improvement Co. v. Munson, 14 Wall. 442, 81 U.S. 442, 448 (1872). Here, the Court concludes (and reinforces that conclusion in the following section of this Report and Recommendation) that a jury could find, from the facts sworn to by Mr. Griffin, that Officer Kyle's use of the fogger was done maliciously and sadistically and that there was no legitimate penological purpose behind her actions. A jury could similarly find, based on the facts alleged by Mr. Griffin in his verified complaint, that when Officer Hammond turned on the ceiling fans and handed the fogger to Officer Kyle, he knowingly participated in her unconstitutional actions.

Further, although Officer Hammond's motion makes a passing reference to qualified immunity, there is no question that in 2010, it was clearly established in the law that spraying an individual with pepper spray or tear gas without any legitimate reason for doing so is excessive force and violates the constitution. As far back as 1992, the Court of Appeals noted that while the Eighth Amendment does not outlaw the use of chemical agents against prisoners *per se*, neither does it "immunize all use of such devices against inmates." Caldwell v. Moore, 968 F.2d 595, 600 (6th cir. 1992). Rather, the key inquiry is, as Hudson teaches, whether there was a legitimate reason to use chemical agents, or whether they were used maliciously and sadistically to cause harm. The latter action is

-13-

clearly unconstitutional. <u>See also United States v. Mosley</u>, 635
F.3d 859, 862 (6th Cir. 2011)("[u]njustified use of pepper spray
in other contexts confirms that it poses a serious risk of
physical injury.  Its use may constitute excessive force in
violation of the Fourth and Fourteenth Amendments")(citing
cases).

Here, the facts, construed most favorably to Mr. Griffin,
could lead a jury to find that Officer Hammond acted maliciously
because he knew that there was no need to restore order in the
dormitory; he knew that Officer Kyle had already used a chemical
agent in an unconstitutional manner; and he knew that by
providing her with an outdoor fogger he was enabling her further
unconstitutional actions.  Certainly, the facts presented at
trial may persuade a jury otherwise, and a jury would be free to
accept his version of the facts as the more likely.  Because a
jury could also draw the opposite inference, however, that is
enough to prevent the entry of summary judgment in Officer
Hammond's favor.

VI.  <u>Officer Kyle</u>

Much has already been said about whether reasonable minds
could differ about whether Officer Kyle's actions violated Mr.
Griffin's Eighth Amendment right to be free from cruel and
unusual punishment.  Her affidavit, which is brief, states that
there was a potentially dangerous situation developing on the day
in question, that it could have led to a riot, and that she used
tear gas and pepper spray in an effort to protect herself and
other members of the prison staff.  Were that all true, a
reasonable jury could conclude that she did not act with the
required sadistic or malicious purpose and that her use of force,
including chemical agents, was reasonably related to the
legitimate need to maintain order in the prison and was not
excessive given the circumstances that faced her.

-14-

The complaint, of course, paints an entirely different picture.  Again, it is important to recall that because it is verified, the Court must treat it like an affidavit submitted for purposes of determining if summary judgment is appropriate.  According to the complaint, and based on events that Mr. Griffin himself witnessed or experienced, the only unusual event that preceded Officer Kyle's use of pepper spray was the fact that the institution was on lockdown status because there had been some fights in the prison yard.  Despite this lockdown status, Mr. Griffin and some other inmates had been given permission by Officer Hammond to use the restroom adjacent to their dormitory.  While this was occurring, Officer Kyle burst in, ordered all of them out of the restroom, and even though they started to obey her order, she sprayed pepper spray into the small restroom.  She then came out into the dormitory, where order had been restored, shouted profanities, and emptied both her pepper spray canister and the large tear gas fogger into the dormitory area.  She then fled the area, leaving Officer Hammond, whom she had also sprayed with tear gas, behind.  These are certainly facts from which an Eighth Amendment violation could be inferred.

In arguing otherwise, Officer Kyle does not give any credence to the facts contained in the verified complaint, but rather bases her arguments on the version of those facts found in her and in Officer Hammond's affidavits.  This, of course, is inappropriate in the summary judgment context.  Similarly, her qualified immunity argument is premised on the absence of any evidence from which malicious or sadistic conduct could be inferred, but such evidence is present here.

Finally, Officer Kyle raises as a "side issue" the notion that this case should have been brought in the Ohio Court of Claims rather than this Court.  Defendant Corrective (sic) Officer Kyle's Motion for Summary Judgment, Doc. #80, at 5.  She

-15-

cites O.R.C. §2743.03(A)(1) in support of this argument.  That statutory section applies, however, only when a plaintiff decides to file an action in the Court of Claims directly against the State of Ohio, which Mr. Griffin has not done.  It has no application here.  Similarly, her brief argument in her memorandum in opposition to Mr. Griffin's summary judgment motion that she is entitled to qualified immunity because "Griffin has never argued that Kyle's action were taken outside her regular scope of employment," see Doc. #76, at 3, is misplaced.  The test for qualified immunity is whether a reasonable state official in the defendant's position would have appreciated the unconstitutionality of her actions given the clearly established law, see Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), and not whether she acted in the course and scope of her employment. That latter inquiry may be relevant to liability for state law torts under Ohio's governmental immunity statutes, see, e.g., Chappell v. City of Cleveland, 585 F.3d 901, 907 n.1 (6th Cir. 2009), but it has no application in determining liability under §1983.  As the court in Smyth v. Lubbers, 398 F.Supp. 777, 784 (W.D. Mich. 1975), observed,

> under Sec. 1983, any person who, under color of law, deprives another of his federal constitutional rights, is liable to the injured party at law or in equity. If a person acts under color of law, it is irrelevant whether the official was acting within or without the scope of his employment by common law standards. See Ex. Parte Young, 209 U.S. 123, 28 S.Ct 441, 52 L.Ed. 714 (1908); Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Consequently, there is no substance to any of Officer Kyle's qualified immunity arguments, and her motion for summary judgment should be denied.

VII.  Recommended Disposition

For the reasons set out above, it is recommended that these

-16-

motions be granted: the second motion for summary judgment filed by defendant Michelle Miller (#71) and the motion to dismiss Ernie Moore as a defendant (#91). It is recommended that these motions be denied: Plaintiff Thomas Griffin, Jr.'s motion for summary judgment (#68); Defendant Hammond's motion for summary judgment (#73); and Defendant Kyle's motion for summary judgment (#80).

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir.1981).

/s/ Terence P. Kemp
United States Magistrate Judge

-17-