IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THOMAS GRIFFIN, JR.**,

    **Plaintiff,**            Case No. 2:10-cv-664

  v.                              **JUDGE GREGORY L. FROST**
                                **Magistrate Judge Kemp**

**CORRECTIONAL OFFICER KYLE,**
**ET AL.,**

    **Defendants.**

## OPINION AND ORDER

### I.

Plaintiff, Thomas Griffin, Jr., an inmate at the Belmont Correctional Institution located in St. Clairsville, Ohio, filed this action under 42 U.S.C. § 1983 seeking to recover damages for the alleged violation of his constitutional rights. After the close of discovery, all parties moved for summary judgment, and Mr. Griffin also filed a motion to voluntarily dismiss his claims against defendant Ernie Moore, the Director of the Ohio Department of Rehabilitation and Correction. In a Report and Recommendation filed on January 17, 2012, the Magistrate Judge recommended that the motion to dismiss be granted, that summary judgment be granted to defendant Michelle Miller, and that the other summary judgment motions be denied.

Two objections have been filed to the Report and Recommendation. Defendant B.J. Hammond, a corrections officer, argues that his summary judgment motion should be granted. Mr. Griffin argues that the Court should not grant summary judgment in favor of Warden Miller. For the following reasons, the Court will overrule the objections and adopt the Report and Recommendation in its entirety.

### II.

When objections are received to a report and recommendation on a dispositive matter, the district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). After review, the district judge "may

accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.; *see also* 28 U.S.C. § 636(b)(1)(C).

### III.

Neither party takes issue with the way in which the Report and Recommendation sets forth the standard for deciding motions for summary judgment filed under Fed. R. Civ. P. 56, and the Court incorporates that portion of the Report and Recommendation by reference. Further, neither Mr. Griffin nor Officer Hammond substantially disputes the way in which the basic facts of the case have been stated. As set forth in the Report and Recommendation, the pertinent facts - construed, of course, in favor of Mr. Griffin as the nonmoving party - are these:

> On April 18, 2010, Belmont Correctional had been placed on lockdown status due to some inmate fights. After the evening meal was served, Mr. Griffin went to the restroom. While he was there, Corrections Office Kyle, one of the defendants, entered and ordered everyone to leave. Mr. Griffin advised her that he had been given permission by another corrections officer to use the restroom, but Officer Kyle again ordered everyone to leave. As Mr. Griffin attempted to comply with her order, she sprayed him with tear gas, and she continued to do so even as Mr. Griffin and the other inmates returned to the dormitory area. Then, with the help of another of the defendants, Corrections Officer Hammond, Officer Kyle emptied a tear gas fogger into the dormitory. Mr. Griffin claims that since that time, he has had problems with his vision and also has experienced weight loss, skin irritation, and breathing difficulties.

(ECF No. 96, at 3-4.)

### IV.

The Court turns first to Officer Hammond's objection. With respect to that defendant's summary judgment motion, the parties' disagreement centers around what Officer Hammond may have known about Officer Kyle's intent to use the tear gas fogger in the dormitory area, and what he might have done to assist her. Officer Hammond, in a sworn affidavit, admits that he was present in the dormitory area that day and that Officer Kyle told him she had lost control of the inmates on one side of the dorm. According to him, he told Officer Kyle to lock the gate so that the inmates could not leave the area, and he believed that if they were actually out of control, nothing would be gained by having a corrections officer actually enter the dorm. With that belief, he gave Officer Kyle the large canister of tear gas, never suspecting that she would actually use it indoors (it was

2

intended for outdoor use). Then, to his surprise, she went into the dormitory. He went in after her, trying to help her escape, and at almost the same time, she began using the tear gas fogger. He fell to the floor and vomited. Eventually, however, he was able to get out of the area after other corrections officers arrived. He argued, based on this version of the facts, that even if Officer Kyle could be held liable for violating Mr. Griffin's constitutional rights, he could not.

Mr. Griffin offered a different, sworn version of what happened. According to him, not only did Officer Hammond give the tear gas fogger to Officer Kyle, but he also turned on the ceiling fans in the dormitory, thus insuring that the gas was widely dispersed in that area. And Officer Hammond gave the fogger to Officer Kyle in the dormitory itself (not, as Officer Hammond claimed, in the restroom area), implying that he was aware when he did so that she was going to use it indoors. The Report and Recommendation concluded that if these facts were true, a reasonable juror could find that Officer Hammond participated in Officer Kyle's actions in a way that would make him liable for any Eighth Amendment violations resulting from her conduct.

Officer Hammond does not specifically take issue with that conclusion. Rather, he attacks its premise. He argues that this Court should not accept Mr. Griffin's version of the key events, even though the matter is before the Court by way of a summary judgment motion. According to Officer Hammond, Mr. Griffin's version of the events in question is "nonsensical" and therefore unworthy of belief - that is, it is not a version of the facts that a reasonable juror could credit. He bases this argument on the assertion that "[i]t would be fanciful to believe that CO Hammond would turn on the fans to spread tear gas maliciously and sadistically use force against inmate Griffin when CO Hammond was in the same room and was equally affected by the tear gas" and that there is no dispute that the tear gas incapacitated him. (ECF No. 99, at 2.) He suggests that no one could believe that a corrections officer would be so indifferent as to his own well-being as to do such a thing and that the Court is therefore required to accept his version of the facts as the only reasonable one.

The Court begins its discussion of this argument with the oft-stated proposition that "[c]redibility determinations, the weighing of the evidence, and the drawing of the

3

legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Consequently, in the usual case, the Court may not "go behind the affidavits and make credibility judgments about the witnesses and their testimony without a trial." *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1998). These propositions would seem to foreclose Officer Hammond's argument.

However, these general statements of the law applicable to summary judgment motions are not absolute.  That is, the Court need not take every factual assertion made by the non-moving party at face value.  While it is true that "even if evidence 'greatly taxes the credulity of the judge,' that alone does not justify a grant of summary judgment," *Amnesty Intern., USA v. Clapper*, _ F.3d _, _, 2011 WL 4381737, at *2 (2d Cir. 2011), there are some (albeit limited) circumstances where a court can disregard facts that, although presented in proper format, are so inherently incredible that a reasonable juror could not believe them.  Stated differently, the nonmoving party must not simply file affidavits that make conflicting factual assertions, but "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  This principle is often applied in cases where "plaintiff's allegations of the events at issue are replete with inconsistent and contradictory statements," thus necessitating some effort to "pierc[e] the veil of the [plaintiff's] allegations" in order to sort out what portion of them a reasonable juror could credit.  *See Aziz Tarif Shabazz v. Pico*, 994 F. Supp. 460, 470-71 (S.D.N.Y. 1998) (Sotomayor, J.).  It is less often the case that a nonmoving party's version of key events, while not internally contradictory, will be simply so divorced from reality that it is completely unworthy of belief.  As the Supreme Court has stated, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (directing a grant of summary judgment based on facts established by a videotape of the incident in question which "so utterly discredited" the plaintiff's version of the facts that "no reasonable jury could have believed him").

Whatever superficial appeal Officer Hammond's position might have, his argument is no different than most other arguments made by parties who have moved for summary judgment and who question the credibility of the nonmoving party's version of the key events. Mr. Griffin's account of events may eventually fail to persuade a jury. However, his version is not internally contradictory, nor is there some definitive piece of evidence, such as a videotape, that would render a reasonable juror incapable of crediting it. Consequently, the Court is required to accept it as true at this stage of the proceedings.

To illustrate this conclusion, the Court notes that even in his own affidavit, Officer Hammond states only that after he was affected by the tear gas, he was physically incapable of turning the fans on or off. His affidavit does not state that he could not have done so prior to being affected. And, in fact, Mr. Griffin says that is what happened; in his response to the objection, he asserts that the controls for the fans are not located in the dorm area where the gas was sprayed, so that Officer Hammond could have (and, in his view, did) turned the fans on after giving the tear gas canister to Officer Kyle and before coming into contact with the gas. Although this latter statement is not in affidavit form, it need not be; it simply represents an argument (and a persuasive one) that there are circumstances under which a jury could believe Mr. Griffin's sworn assertion that Officer Hammond activated the ceiling fans with full knowledge that Officer Kyle either was going to spray gas into the dorm, or even after she started to do so. Thus, the record does not so clearly demonstrate the impossibility of this sequence of events as to render it utterly incapable of being believed by a reasonable juror. Under these circumstances, the usual summary judgment rules apply, and those rules mandate the denial of Officer Hammond's summary judgment motion.

## V.

Mr. Griffin's objection relates to the summary judgment motion filed by defendant Michelle Miller. At the time of the incident, Ms. Miller was the Warden of the Belmont Correctional Institution. There is no evidence, nor any allegation, that she was personally present in the dormitory area when Officer Kyle used the tear gas fogger, nor that she had any advance knowledge that such an incident might occur. Rather, the basis

of Mr. Griffin's claim against her is that she either failed properly to train corrections officers in the use of tear gas, or that she failed to discipline corrections officers in a way that led directly to Officer Kyle's alleged misuse of tear gas.  The Report and Recommendation concluded that the allegations in the complaint on this subject were conclusory and did not have to be accepted by the Court as true, and that Warden Miller had come forward with evidence that the training of new corrections officer was adequate and that there was no pattern of improper discipline that could have led corrections officers to believe that such uses of tear gas were acceptable.  Assuming those facts to be true, Warden Miller would be entitled to summary judgment.

In his objection, Mr. Griffin asserts, first, that the misuse of pepper spray is customary at Belmont, and he refers to two other incidents in which such misuse allegedly occurred.  He does not give a date for either incident, nor does his objection indicate that either was factually similar to the one involved in this suit other than that they involved the use of a chemical spray on an inmate who was not physically resisting an officer's commands.  Second, he contends that the Warden has adopted the misuse of pepper spray as an institutional policy by condoning that misuse.  Third, he asserts that misuse was so pervasive that the Warden must have been aware of it, and that she was reckless with respect to the continuation of that misuse.

The primary problem with Mr. Griffin's objection (beyond the fact that he did not make these arguments in a timely fashion in his response to the Warden's summary judgment motion) is that none the facts he alleges in his objection are supported by an affidavit, declaration, or any other type of evidence admissible under Rule 56(c).  Under these circumstances, the Court simply cannot consider them in deciding whether to grant summary judgment to Warden Miller.  *See, e.g., Batey v. Amerigroup Tennessee, Inc.*, No. 3:09-1061, 2011 WL 1100082, at *4 (M.D. Tenn. Mar. 22, 2011) ("the court must disregard the unsupported factual assertions contained in [objections to a Report and Recommendation on a summary judgment motion]").  The Court of Appeals has consistently held that if documents submitted in connection with a motion for summary judgment do not satisfy the requirements of Rule 56, "they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993).  Thus, the record before this Court,

including the presence of evidence supporting the Warden's motion and the absence of evidence supporting Mr. Griffin's position, has not been changed by the filing of his unsworn objection.

Even if the Court were to consider the additional information contained in the objection, it would not be sufficient to allow a reasonable juror to find that Warden Miller might be liable for Officer Kyle's actions. In a case where the evidence shows that a supervisory official knew only "of isolated and apparently unrelated incidents of bad behavior" by a subordinate, summary judgment must be granted to the supervisor on claims asserted under §1983. *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996); *see also Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 582 (1st Cir. 1994)("isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference"). It is clear that "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003), and that in order to establish supervisory liability on the theory that a supervisor was aware of and condoned multiple instances of misconduct, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).

Here, Mr. Griffin identifies only two other instances of alleged misuse of chemical sprays, neither of which appears to involve the use of a tear gas fogger inside a dormitory area. He describes one of them as being in litigation in a case which appears to have been filed in the Ohio Court of Claims in 2011, and the other as being "more recent." At best, it can be inferred that one of these incidents occurred prior to the 2010 incident at issue here. That clearly would not be the type of widespread, flagrant or rampant abuse of chemical sprays that would impose liability on a supervisor such as the Warden. Consequently, even if Mr. Griffin's allegations about other uses of chemical sprays were properly supported (which they are not), and even if his bare-bones description of what occurred was considered as evidence of other improper uses of these devices, there would still be insufficient evidence to hold the Warden liable for the

actions of Officer Kyle.  Her summary judgment motion will be granted.

## VI.

For all of these reasons, the objections to the Report and Recommendation filed by Defendant Hammond (ECF No. 99) and by Mr. Griffin (ECF No. 102) are **OVERRULED** and the Report and Recommendation (ECF No. 96) is **ADOPTED AND AFFIRMED**.  The second motion for summary judgment filed by defendant Michelle Miller (ECF No. 71) and the motion to dismiss Ernie Moore as a defendant (ECF No. 91) are **GRANTED**.  The motions for summary judgment filed by Plaintiff Griffin (ECF No. 68), by Defendant Hammond (ECF No. 73), and by Defendant Kyle (ECF No. 80) are **DENIED**.

**IT IS SO ORDERED.**

     /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE